AGEE, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority opinion except as to section 111(B)(2). I write separately as to that section because I do not find that Roger W. Hurlbert has adequately pled an ongoing injury sufficient to confer standing. Accordingly, I respectfully dissent as to section 111(B)(2) of the majority opinion and I would affirm the district court’s judgment with respect to Hurlbert.
I.
In June 2008 Hurlbert made a telephone request pursuant to VFOIA for real estate records in the possession of the Director of the Real Estate Assessment Division of Henrico County, Virginia (“the Director”). When that request was denied, Hurlbert filed suit against the Director, who filed his answer to Hurlbert’s initial complaint on February 16, 2009. By letter dated the next day, February 17, 2009, the Director provided Hurlbert with the requested data.
On March 10, 2009, the Director filed a motion to dismiss Hurlbert’s suit pursuant to Rule 12(c) and Rule 12(h)(3) based, in part, on a “[l]ack of ^jurisdiction.” J.A. 54A. In the memorandum of law accompanying his motion, the Director specifically argued that Hurlbert lacked standing based on the incongruence between his allegations of past injury and his request for prospective relief.[1] It is clear from the record that, at least by March 10, 2009, Hurlbert was aware that his standing was at issue. Despite this knowledge, the plaintiffs, including Hurlbert, filed an amended complaint on March 18, 2009 that did not materially alter Hurlbert’s allegations and, indeed, repeated them almost verbatim. The specific allegations in the amended complaint pertaining to Hurlbert are as follows:
15. Plaintiff Roger Hurlbert is the sole proprietor of Sage Information Services. Mr. Hurlbert is in the business of obtaining real estate tax assessment records. Mr. Hurlbert obtains these records by submitting FOIA requests to state governmental agencies.
16. Mr. Hurlbert submitted a FOIA request to the Henrico County Real Estate Assessor’s Office pursuant to Virginia Code § 2.2-3704. The request was made by telephone on June 5, 2008. In *408 that telephone conversation, an official from the Assessor’s Office denied Mr. Hurlbert’s FOIA request. The only reason the official gave for denying the request was that Mr. Hurlbert is not a citizen of Virginia.
36. A state law that denies non-citizens the right to pursue their common calling violates Article TV’s Privileges and Immunities Clause. The Henrico County Assessor’s Office denied Mr. Hurlbert access to public records based on the citizens-only provision in Virginia Code § 2.2-3704. Section 2.2-3704 makes it impossible for Mr. Hurlbert to pursue his common calling by obtaining Virginia public records through Virginia’s FOIA on an equal basis with Virginia’s citizens. This discrimination contravenes the Privileges and Immunities Clause.
J.A. 62A-67A.
The final paragraph of the amended complaint contains a vague general statement alleging irreparable harm:
42. Deprivation of a constitutional right constitutes irreparable harm. The citizens-only provision in Virginia Code § 2.2-3704 denies the Plaintiffs access to information. As a result, the provision bars the Plaintiffs from participating in a range of economic, political, and social activities....
J.A. 69A.
The Director argues that Hurlbert lacks standing because “Hurlbert alleged only one discrete instance where his alleged constitutional rights were violated.” Br. of Appellee at 31. In other words, the Director asserts there is a fatal variance between the past injury alleged and the prospective remedies sought. I agree.
II.
A.
“It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist.” Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir.1999); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982) (“The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction.”).
In this case, the Director challenged Hurlbert’s standing by filing a motion for judgment on the pleadings pursuant to Rule 12(c). “[W]e review the district court’s dismissal [under Rule 12(c) ] de novo and in doing so apply the standard for a Rule 12(b)(6) motion.” Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir.1999). “The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; ‘importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.’ ” Id. (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992)) (alteration in original).
Clearly, by moving for judgment on the pleadings, the Director’s motion to dismiss was designed to test the sufficiency of Hurlbert’s allegations as a basis for subject matter jurisdiction. In his memorandum of law submitted to the district court the Director argued that:
[Hurlbert’s] Complaint does not allege that denial of [the data] caused him any particularized harm, nor has he requested monetary damages. More tellingly, Mr. Hurlbert has also failed to allege that he intends to make a similar request of Mr. Davis in the future or is otherwise likely to again be denied public records by Mr. Davis or the County of Henrico’s Real Estate Assessment Division.
*409 Dist. Ct. Docket No. 21 at 6. The Director did not challenge the veracity of the facts pled and, indeed, had already admitted in his answer to the initial complaint that his office had received a written request from Hurlbert seeking records pursuant to VFOIA. J.A. 26A-27A.
On appeal, Hurlbert first puts forth a procedural argument, claiming “[t]he district court erred when it confined its standing inquiry to the Amended Complaint alone.... ” Br. of Appellant at 26. Specifically, Hurlbert avers that the district court should have considered his declaration, filed after his initial complaint, in which he stated that after the Director denied his request for data, he “was dissuaded from making any further FOIA requests in Henrico County.” J.A. 49A. However, the district court was not obligated to go beyond the pleadings in resolving the Director’s motion to dismiss.
Hurlbert cites Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) in support of his position that the district court was required to consider materials outside the pleadings in adjudicating the motion to dismiss. Warth stands only for the proposition, clearly in accord with our precedent, that a district court may, but is not required, to consider such materials. See Warth, 422 U.S. at 501, 95 S.Ct. 2197 (explaining that while “both the trial and reviewing courts must accept as true all material allegations of the complaint,” “it is within the trial court’s power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiffs standing”).
Hurlbert also relies on our statement in Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765 (4th Cir.1991) that “[i]n determining whether jurisdiction exists, the district court is to regard the pleadings’ allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.” 945 F.2d at 768 (emphasis added). Not only did that case also make the district court’s consideration of non-pleading material permissive rather than mandatory, it also involved a motion under Rule 12(b)(1) which, unlike the Rule 12(c) motion to dismiss filed in this case, is unaffected by Rule 12(d). Rule 12(d) specifically addresses a district court’s consideration or exclusion of materials outside the pleadings.[2]
For the first time on appeal, Hurlbert argues in his reply brief that “[b]y submitting non-pleading materials with his motion, [the Director] expanded the scope of the standing inquiry beyond the logical sufficiency of the complaint to include factual evidence bearing on the truth of Hurlbert’s allegations.” Reply Br. of Appellant at 8. We need not address any such argument, however, as any argument raised for the first time in a reply brief has been abandoned. Edwards, 178 F.3d at 241 n. 6; see also U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 356 n. 8 (4th Cir.2009) (citing Yousefi v. INS, 260 F.3d 318, 326 (4th Cir.2001)); United States v. Al-Hamdi, 356 F.3d 564, 571 n. 8 (4th Cir.2004).
In my view, Hurlbert’s argument would have no merit in any event. A plain reading of the district court’s opinion reveals that it did not rely on non-pleading materi *410 als submitted by either party in reaching its decision regarding Hurlbert’s standing. Therefore, Rule 12(d) simply would not apply.[3]
“As is true of practice under Rule 12(b)(6), it is well-settled that it is within the district court’s discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c).” 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed.2010). As the Eleventh Circuit has recently explained, “[a] judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings.” Harper v. Lawrence County, 592 F.3d 1227, 1232 (11th Cir.2010). I agree with our sister circuit’s view that “ ‘not considering’ such matters is the functional equivalent of ‘excluding’ them — there is no more formal step required.” Id.
For the reasons set forth above, the district court was not required to consider Hurlbert’s declaration nor was it required to convert the proceeding to one for summary judgment.
B.
To possess the constitutional component of standing, a party must meet three requirements:
(1) [the party] has suffered an “injury in fact” that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); Bishop v. Bartlett, 575 F.3d 419, 423 (4th Cir.2009). As the party invoking federal jurisdiction, Hurlbert bears the burden of establishing these elements. Long Term Care Partners, LLC v. United States, 516 F.3d 225, 231 (4th Cir.2008).
Of course, Plaintiffs need not “await the consummation of threatened injury to obtain preventive relief.” Blum v. Yaretsky, 457 U.S. 991, 1000, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Instead, where a party seeks prospective relief, “[t]he question becomes whether any perceived threat to [the plaintiff] is sufficiently real and immediate to show an existing controversy.” Id.; see also Lujan, 504 U.S. at 564, 112 S.Ct. 2130 (examining imminence of asserted injury); City of Los Angeles v. Lyons, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (examining likelihood that plaintiff would suffer future injury).
Long Beach Area Chamber of Commerce v. City of Long Beach, 603 F.3d 684, 689 (9th Cir.2010).
To meet the “injury in fact” requirement, Hurlbert bears the burden of proving “an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (internal citations and quotations omitted). While Hurlbert arguably pled a concrete and actual injury — the denial of his VFOIA request — sufficient to confer standing at *411 the time he filed suit, he did not plead any ongoing injury sufficient to maintain standing for declaratory and injunctive relief.
The allegations in paragraphs 15 and 16 of the amended complaint clearly indicate that Hurlbert pled only that he suffered an alleged past injury as a result of the Director’s denial of his June 2008 request. He pled no future harm that he might reasonably expect to suffer as a result of Virginia’s residency requirement. Even though Hurlbert pled a past injury and knew that his standing had been challenged, he nonetheless filed an amended complaint that did not request compensatory damages for his losses arising out of the Director’s June 2008 denial. Instead, he sought a court order:
1. Declaring that Virginia Code § 2.2-3704 violates the Privileges and Immunities Clause of Article IV and the dormant Commerce Clause of the United States Constitution;
2. Enjoining the Defendants from enforcing the citizens-only provision of Virginia Code § 2.2-3704;
3. Awarding the Plaintiffs their costs and reasonable attorneys fees pursuant to 42 U.S.C.A. § 1988(b); and
4. Granting the Plaintiffs such other relief as the Court may deem just and proper.
J.A. 18A.
The district court was therefore confronted, incongruously, with pleadings that sought prospective declaratory and injuncfive relief based only on a single past (and since remedied) harm. As a result, I would find the district court correctly determined “that [Hurlbert] has not adequately pled an ongoing injury, but bases his claims solely on not receiving the documents he requested” in June 2008. J.A. 84A.
Although Hurlbert’s failure to plead an ongoing injury in fact is, in and of itself, fatal to his standing, his pleadings also fail to establish the element of redressability. As the district court explained:
If [Hurlbert] had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy the alleged harm. Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 108-09, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). But no such allegation is made in either [Hurlbert’s] original or amended complaint, and therefore the Complaint fails to confer Hurlbert with standing as an injunction, which provides relief from a future harm, cannot redress [his] claim of a singular, past wrong.
J.A. 84A (emphasis added). Once the Director provided Hurlbert with the information he sought, the “controversy” Hurlbert pled, the denial of information in June 2008, had been resolved. As a result, his allegations lack two of the three elements required for standing — injury in fact and redressability.[4]
The majority relies on Hurlbert’s lone allegation that “Section 2.2-3704 makes it impossible for [him] to pursue his common *412 calling by obtaining Virginia public records through Virginia’s FOIA on an equal basis with Virginia’s citizens,” J.A. 17A, 67A, and concludes that “the complaint itself is best read to plead an ongoing injury....” Supra at 16. In my view, this reliance is unwarranted.[5]
Hurlbert repeated in both his initial and amended complaints that VFOIA “makes it impossible ... to pursue his common calling by obtaining Virginia public records ... on an equal basis with Virginia’s citizens.” The majority views this statement as sufficiently pleading an ongoing injury. I disagree. Considered in context, I believe the statement is more appropriately read as a conclusion of law derived from the factual assertions in paragraphs 15 and 16. Such a reading comports with the language in the complaints.
First, use of the legal term of art “common calling” evinces a legal, versus colloquial, meaning.[6] The Supreme Court’s longstanding jurisprudence establishes that a state may not, in most circumstances, interfere with a nonresident’s pursuit of a common calling. In light of this clarity, the sentence at issue in paragraph 36 is nothing more than a restatement of the legal determination to be made by the district court — whether the Director’s denial of Hurlbert’s request in June 2008 violates the Privileges and Immunities Clause.
Secondly, the specific allegations in paragraph 15 allege a past, not ongoing or future, injury. At the time the complaint was drafted and filed, Hurlbert had requested but had not yet been given the *413 data. Under these circumstances, the statement in paragraph 22 of the initial complaint understandably claims, using the present tense, that VFOIA prevents Hurlbert from pursuing his common calling; however, no such circumstance existed for paragraph 36 of the amended complaint. Hurlbert did not allege that the Act would continue to interfere with his pursuit of a common calling nor indicate whether or when he expected to make another request for Virginia records. There are simply no factual allegations supporting the conclusion that Hurlbert suffered a prospective, ongoing injury that is “concrete and particularized” as to the amended complaint.
While we have acknowledged that “prospective challenges are not per se invalid,” we have also explained that “the threat of injury must be ‘sufficiently real and immediate to show an existing controversy.’ ” Comité de Apoyo a los Trabajadores Agrícolas (CATA) v. U.S. Dep’t of Labor, 995 F.2d 510, 515 (4th Cir.1993) (quoting O’Shea v. Littleton, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). “The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again — a ‘likelihood of substantial and immediate irreparable injury.’ ” City of L.A. v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)(quoting O’Shea, 414 U.S. at 502, 94 S.Ct. 669).
At the time Hurlbert filed his initial complaint he may have had standing to sue the Director based on the allegations pled concerning the denial of his June 2008 VFOIA request, but he failed to seek compensatory damages flowing from that denial. Once the Director provided him with the data he sought, Hurlbert failed to plead any additional facts in his amended complaint indicating that he was likely to make additional requests for such information in the immediate future. He failed to do this even though he was aware that the Director had challenged his standing to sue. Indeed, the allegations pertaining to Hurlbert in the amended complaint mirrored those set forth in his initial complaint. As a result, I would find, contrary to the majority’s holding with respect to Hurlbert, that inferring an ongoing injury from the single sentence in paragraph 36 is simply too “speculative and conjectural.”
Accordingly, I respectfully dissent from section 111(B)(2) of the majority opinion.

. In his memorandum of law submitted to the district court the Director argued that "[Hurlbert's] Complaint does not allege that denial of these materials caused him any particularized harm, nor has he requested monetary damages. More tellingly, Mr. Hurlbert has also failed to allege that he intends to make a similar request of Mr. Davis in the future or is otherwise likely to again be denied public records by Mr. Davis or the County of Henri-co’s Real Estate Assessment Division.” Dist. Ct. Docket No. 21 at 6.

. Rule 12(d) provides:
If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.
Fed.R.Civ.P. 12(d) (emphasis added).

. Moreover, the term "dissuaded” in Hurlbert’s declaration is insufficiently descriptive to establish an actual or imminent injury-in-fact.

. Although my dissent is based on the dissonance between Hurlbert's allegations of past harm and his request for prospective relief, I would also find that his claims are moot. Hurlbert argues that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.” Friends of the Earth, 528 U.S. at 189, 120 S.Ct. 693. I find no merit in Hurlbert's argument because it presupposes that declarative and injunctive relief are "[t]he only effective remedies for [his] ongoing injury." Br. of Appellant at 28 (emphasis added). In finding that he has not pled an ongoing injury but only a past single incident that has since been remedied, I see no reason why the mootness doctrine would not likewise bar his claim.

. The majority disagrees with my assertion that it relies only on the allegation in paragraph 36 of the amended complaint and avers that it "read[s] the conclusion of law in paragraph 36 in context with the very facts pled in paragraphs 15 and 16 of the complaint” and "read[s] the complaint as a whole.” But when read in context, Hurlbert’s statements that he "is the sole proprietor of Sage Information Services,” a company that "is in the business of obtaining real estate tax assessment records,” and that he "obtains these records by submitting FOIA requests to state governmental agencies” are merely prefatory to his only concrete and particularized allegation of damage. This allegation — alleged in the past tense — asserts only that he "submitted a FOIA request” that was "denied." J.A. 62k. With respect to my colleagues, the fact that he "is” in the business of making such requests and once made such a request that had been denied does not demonstrate that an additional request was "actual or imminent.” The facts alleged simply did not indicate that any threat to Hurlbert was "sufficiently real and immediate to show an existing controversy.” Blum, 457 U.S. at 1000, 102 S.Ct. 2777.

. The Supreme Court has repeatedly emphasized that the Privileges and Immunities Clause of the federal Constitution protects the rights of citizens in one state to transact business in another state "on terms of substantial equality with the citizens of” the other state. Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 280, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985); Toomer v. Witsell, 334 U.S. 385, 395, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948) (stating that the Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy”); see e.g. Supreme Court of Va. v. Friedman, 487 U.S. 59, 70, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988) (holding "that Virginia’s residency requirement for admission to the State’s bar without examination violates the Privileges and Immunities Clause”). This has been referred to as the fundamental right to pursue a common calling. See United Bldg. & Constr. Trades Council v. Mayor and Council of Camden, 465 U.S. 208, 219, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984) ("Certainly, the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause.”); Hicklin v. Orbeck, 437 U.S. 518, 524, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) ("Appellants’ appeal to the protection of the Clause is strongly supported by this Court's decisions holding violative of the Clause state discrimination against nonresidents seeking to ply their trade, practice their occupation, or pursue a common calling within the State.”).